May it please the Court, Counsel. Good morning. My name is Megan Joyce and I represent Vaquan Sledge in the matter of United States v. Vaquan Sledge. It is true that a district court has broad discretion in handling allegations that a juror did not honestly answer questions posed during voir dire. However, as this Court recognized in United States v. Tucker, that discretion is not unlimited. When a party brings or makes a sufficient showing of McDonnell-type irregularities, that party is entitled to this Court's and the district Court's help in getting to the bottom of the matter. That, Your Honors, is what Mr. Sledge asked through this appeal today. He asked for this Court's and the district Court's help in getting to the bottom of an allegation that juror L.O. failed to disclose in response to jury voir dire questions posed in this drug distribution conspiracy case that his daughter died of an overdose. Because Mr. Sledge has made a sufficient showing under the three-part test of McDonnell, because Rule 606B does not preclude evidence and testimony on matters that occurred outside of jury deliberations, and because the presence of even one partial juror violates Mr. Sledge's right to trial by an impartial jury, he asked that this Court reverse and remand for a new trial, or at the very least, an evidentiary hearing to investigate and remedy this juror misconduct. We turn then to the three-part test set forth in McDonnell. First, juror L.O. failed to honestly answer a question that was posed to the jury panel during voir dire. During voir dire, the district court first questioned the jury panel generally about their involvement with the criminal justice system. In response to that question, three jurors asked to speak privately with the district court and counsel. During those private conversations, one juror indicated that her son was convicted of selling drugs, a second juror indicated that her son had struggled with addiction and had been incarcerated for drug distribution, and a third juror indicated that her brothers had been charged in federal court for distributing drugs and that one of those brothers, in fact, eventually died of an overdose. Mr. Sledge's trial counsel did challenge those three jurors, but none of them were excused. Importantly, juror L.O. neither responded to that question nor asked to speak privately with the district court. Counsel, are you suggesting that the juror should have volunteered information that they weren't specifically asked? We do believe, Your Honor, that the juror was more specifically asked that question during the governance questioning. Later, the government specifically asked the panel whether anyone had a family member, a close friend who struggled with addiction. While there was one juror who indicated that his cousin was addicted to OxyContin and that she had passed away a year or two earlier, it does not appear from the record that juror L.O. responded to that question. Moreover, the district court also asked the jury panel whether any prospective jurors had any bias, prejudice against the parties, or concerns about the nature of the case. In response to that question, one prospective juror was, in fact, excused because she indicated that her family had extensive issues with drug and alcohol issues and she did not feel that she could be impartial. And yet, having heard those discussions, juror L.O. inexplicably sat on his hands and did not reveal pertinent information about his daughter's death. Well, maybe L.O. felt as if they could put it out of their mind and be fair and impartial. And by the way, your first question related to contact with law enforcement. Just because this person had a relative who overdosed doesn't mean there was any contact with law enforcement. Yes, Your Honor. However, the record suggests that it was not as if juror L.O. simply misunderstood the question or did not feel that the evidence was responsive to that question. Juror L.C. later disclosed to defense counsel an interjury communication in which juror L.O. revealed this information to the jury panel. During that discussion, the other jurors asked juror L.O. why he had not revealed that information and whether he thought that it was fair. At that time, juror L.O. did not indicate that he believed that he had answered the question. He did not believe that the information that he had was not responsive to the questions that was asked. Instead, his response to whether he thought that it was fair was simply, who cares. That indicates serious concerns about juror L.O.'s impartiality and his ability and willingness to serve as an impartial juror in this case. Moreover, Your Honor, it's important to note as it relates to the first prong of the McDonnell test that we simply do not have to take juror L.C.'s word for it. When juror L.C. made the disclosure to defense counsel, she also provided a text message communication that she had had with yet another juror. And in that text message communication, that other juror did confirm that he recalled juror L.O. disclosing to the jury that his daughter had died of an overdose. Therefore, Your Honor, we believe that we have made a non-speculative and substantiated showing under the first prong of McDonnell. A question for you. Would you agree that the record of the questions to the jury, to the prospective jurors in open court, you can't tell from that record what jurors responded or raised their hand when the question was asked that you're referring to? Do you agree with that? Yes, Your Honor. So then we're to, it seems to me that your argument rises and falls on the assertions of this, what was it, an alternate? Yes, Your Honor. Would you agree that that's your case on this point, is through the testimony or the assertions of this alternate? Well, again, Your Honor, the juror L.C.'s allegations are corroborated by a text message communication with yet another juror. As to the inadequacy of the record, I would respond with a couple points, Your Honor. First, at the time that the question... I think the government attorney said he was going to get back. He may or may not get back to those individual jurors. Are we really hard-pressed to go beyond the record of the questions that were asked in open court and the responses? A couple points, Your Honor. First, I think it's important to note that that question was asked during the government's wadir. And so to the extent that there is an inadequacy of the record on that point, it was the onus of the government to make the point clear. Furthermore, I think it's important to go, again, to what exactly was said in the jury room. Again, when Juror L.O. was pressed on this point by his fellow jurors, he did not indicate that he had answered the question honestly or that he had raised his hand. He simply responded, who cares? And finally, Your Honor, I think it's also important to note that Mr. Sledge's trial counsel actually passed on their last peremptory challenge on this case and did, in fact, strike one of the jurors, as is the recollection of Mr. Sledge's trial counsel, that had responded affirmatively to that question. And therefore, I do believe that there are significant questions as to what would have happened and whether Mr. L.O. would have been permitted to serve on this jury had he answered that question honestly. And with that, Your Honor, I will reserve my remaining time for rebuttal and ask this Court to reverse and remand on this and all other issues for further proceedings. Thank you. Very well. Thank you. May it please the Court, Honorable Judges, Counsel. My name is Thomas Jackson, and I was appointed to represent Darius Sledge, as noted by the Court pursuant to the Criminal Justice Act. Unlike Ms. Joyce, excuse me, I also did represent Mr. Darius Sledge at the lower court level. First, we joined the Kwan's argument regarding the failure on the Rule 606 as well as the misconduct or perceived misconduct by the juror in this case, and we urge the Court to recognize that this should be remanded at least for an inquiry into the 606 issue. I would note that the failure of the record, I would add my note to Ms. Joyce's argument on this point, that this is the failure of the record, which I would agree it was the government who had asked the question. That failure is all the more reason for the 606 inquiry. Now, regarding Darius's appeal, Darius has a rather unique situation. Of course, Darius appealed a number of issues in this case, but the one I am going to specifically concentrate on is the failure of the Continuing Criminal Enterprise, the CCE. Counsel, could you begin by addressing the government's invited error argument with regard to that element two? Yes, Judge. In this case, we asked for jury instructions that specifically set forth the predicate offenses. The government argues that that could have been resolved through a special verdict form. The problem with that is that the jury instructions are the law of the case, and in this case, the jury instructions were at least ambiguous, but probably, or I would urge this Court to recognize, those jury instructions did not properly reflect the law of the case. So while jury instructions are the law of the case, the special verdict form is simply a way for the jury to reflect what their decision is, nothing more. It cannot replace the law of the case, which is what the jury instructions were supposed to do here. In this case, of course, the big problem is that Darius, unlike Baquan, Baquan does not have, in my view, the same appealable issue, is that Darius was found not guilty of count seven. When we have a case like this, where there is a CCE, a Continuing Criminal Enterprise, I have to concede on behalf of Darius that he was convicted of the conspiracy, he was convicted of the money laundering charge, he was convicted of maintaining a drug premises, but the error comes in, and what is the third predicate offense under element two? And what I would urge this Court to recognize is that when the verdict came back that he was not guilty on count seven, which would be the distribution of oxycodone, there is no possible way that anyone, including this Court, can ascertain what the third predicate offense is. I mean, in essence, my initial briefing was an invitation to the government to say, this was the third predicate offense. The government cannot answer that. That's because it doesn't exist. They certainly have argued, and I think even the District Court mentioned, that it could be a number of different charges, but that gets into the due process element of this case. Darius, and myself as his legal counsel, we have to know the elements of the offense in order to defend against those charges. If the government is going to argue that something else that they may have proven in trial was the third predicate offense, the issue becomes that charge, whatever that charge might be, may have been subject to a bad warrant. But if I can follow up on Judge Grass's question, if, in fact, the special verdict form had been used, wouldn't we then be able to identify the three offenses that were part of the CCE? And wouldn't that have solved the problem? Well, if my position on that, Judge, is that had the special verdict form been used, then the jury instructions should have reflected the special verdict form. I think the judge in this case, or I would submit to this Court, the judge in this case, if that was what the judge was going to do to remedy the issue here, then what the judge... As I understand it, both parties submitted instructions that contained unanimity requirement, right? We did. Do we know how that fell out, or why it fell out? We did. The judge in this case, my memory is that... Candidly, part of the problem, as I view it, is the Eighth Circuit instructions. So it's fun for defense counsel to sort of turn to the government and say, it's the government's fault. They should have followed what we did. But in this case, I think we have to actually look all the way back to the Eighth Circuit's recommended jury instructions. There are sort of two. There's one that sets out each predicate offense, and there's one that does not. But the comment to, I think it's Note 5, the comment to jury instruction Note 5, seems to read that where there is an ambiguity as to what the predicate offenses are, then the specific unanimity setting forth which charges. That's where we come into the problem in this case, is because we don't know what the unanimity was, because we don't know which predicate offenses there are. So back to your original question, had the judge in this case done the special verdict form, then I likely would have still been arguing that we still need jury instructions that reflect what that special verdict form is to say. Counsel, were there reasons that the special jury verdict form was prejudicial to Darius, or for some reason you didn't want to accept it or be objected to it? My position before the district court and here today is that one way or another, we still need the jury instructions to reflect the law of the case. And even if we assume arguendo that had the special verdict form, had the judge accepted that special verdict form, that's a decision on the judge anyway. That's not a decision that I necessarily invite that error. That's a decision by the judge not to accept that special verdict form, to be clear. But had the judge even accepted that special verdict form, we don't know what would have happened. It's all hypothetical, but I still think that had he accepted the jury instructions and the special verdict form in the manner of the government, we still would have an issue that had Darius then still been convicted, and again, we don't know what would have happened, we still would have an issue regarding the special, or excuse me, regarding the jury instructions not reflecting the law of the case. And this is important in terms of the government's argument that there could have been other predicate offenses that the jury saw and they agreed upon because those jury instructions then could have reflected the three that he was charged with or others that the government believed that they proved throughout the course of the trial. In this case, they didn't ask for those special instructions, or they didn't ask for those instructions to be included, and as such, they weren't included. Darius was found guilty. It also impacted his ability to file a motion for acquittal. Those were filed in this case. I would submit to this court that had proper jury instructions been utilized, that the judge would have had no choice, even if the jury would have convicted, that the judge would have had no choice but to acquit Darius of that continuing criminal enterprise. I've reserved the rest of my time. Thank you very much. Before you do that, the district court made a ruling about the instructions or verdict form being too onerous. Yes, Judge, and that's actually… What's the context of that and what was the court referring to? Judge, that's actually my memory of the case law, is that a complex special verdict form is frowned upon by this circuit, and I believe that both myself and the district court in this case were concerned  and ultimately leading to a mistrial, and again, that ties into my argument regarding the jury instructions not reflecting the special verdict form or vice versa. So back to the other judges' questions, I think had there been a special verdict form, had the judge actually done that and had a complex special verdict form, it means that the jury instructions… When the court said that, was it in the context of a ruling or did the court simply offer on its own and without, not in the context of ruling on an objection, but simply an observation that the court made without any prompting or urging? My memory is that it was an observation of the court and a correct statement of the case law, is that the circuit has generally frowned upon complex special verdict forms in cases like this. Thank you. May it please the court. Good morning, counsel. My name is Lori Conroy. I'm an assistant United States attorney here on behalf of the APELE, the United States of America. We are here requesting that this court affirm the judgment in all respects in this case. Your Honors, I would like to begin with the source and the context of the allegation of juror misconduct in this case. When we are looking at whether a district court abused its discretion, one cannot merely ignore the source and the context of the information that led to the question as to whether there was juror misconduct. In this case, as is reflected in the transcript of the status conference that is the subject of the United States' 28-J letter, the district court noted that when the jury was retreating back to the deliberations room after the verdict that the dismissed alternate confronted the district court and indicated to the district court that it had displeasure in being dismissed as the youngest female and a non-employed individual on the jury. That was the first contact that this juror had with the district court. There were no allegations of anything untoward in the jury room or during the trial at that point. That contact with the district court comes after this dismissed alternate defied the district court order and reached out to the family member of the appellant Darius Sledge after being dismissed and during deliberations. Those messages are a part of the record in this case. That dismissed alternate said to the defendant Darius Sledge's mother, an individual from Detroit, Michigan, who happened to be watching a trial, was not a witness in the trial in Fargo, North Dakota, I just got dismissed from the jury. Please don't tell anyone or they won't want to call me back in. This individual at that point acknowledged her zeal to insert herself in this trial. At that point, she expressed her displeasure in being dismissed from the jury and indicated that she hoped individuals reviewed her notes and that she may perhaps be called back in to deliberate. That is the first consideration for this court in determining whether the district court abused its discretion in opening up the verdict in this case. It also serves to highlight what the case law says and the genesis of 609B about why we should be reluctant. Let me ask you this. Is there any case law or any suggestion that the district court shouldn't have considered what the alternate juror had to say because that juror violated the court order? I'm not aware of any case law on that, Your Honor. However, I do think that when you look at the case law on, especially United States v. Caldwell, we have a spectrum here. The more speculative and unsubstantiated the allegation of misconduct, the less burden to investigate. That's on one side of the spectrum, and on the other is the more serious potential jury contamination where you have extrinsic evidence, and then there is a heavier burden to investigate. So it is not the fact that there was an order violation. It is the repeated attempts by this dismissed alternate to insert herself back into this process. If you look at the record, Your Honors, you can see that by the United States' count from July to September, there are seven contexts in various situations to try to insert herself into the process. You have a reaching out to defense counsel. You have in the record context that indicates that this individual was in fact in contact with the defendant, Baquan Sledge. She reaches out to counsel to say, Baquan and I would like a few minutes of your time. There are multiple contacts, and in fact, counsel for Mr. Sledge says, absent a change in Lisa's statements about the jury, I do not see an issue. And so what you see here is that the information is growing over a series of months until finally this dismissed alternate lands on what has us in front of the court, the allegation that L.O. had a daughter who perhaps overdosed. Now the record does not show in any way, shape, or form that L.O. had a daughter who died. I would direct the court's attention to 1397, Exhibit 4. This is the text string between the jurors. The dismissed alternate says, Do you remember what the old guy Lyle said happened to his daughter that OD'd on the pills? Did she die? The response is, I recall him mentioning, but don't recall that she died. All of the briefing in this case is supposition-based. It takes for granted that that is the fact, that this individual had a daughter who died. This is not a situation like in Remmer, which is cited by the appellants, where you have concrete information that is supported by something other than intra-jury statements. This is not an individual who was directly asked a question. The record correctly notes, excuse me, the court has correctly noted, that the United States asked a question, a number of jurors raised their hands, but based upon time, only one juror was asked follow-up questions. However, the record shows that both of the defense attorneys in this case also had allotted time from the district court to ask follow-up questions. And, in fact, counsel for B'Quan Sledge ceded his time and did not use all of it to follow up with jurors. And then there was a third opportunity to ask questions. The record reflects that the United States did ask that the individuals who had something to offer in response to its questions related to opioids raise their hands so that they could be seen by all parties. There is case law that provides, and that would be the Williams case, that where an individual does not question a juror on voir dire, there's strong suspicion that counsel deliberately gambled on the possibility of a favorable juror. And that case also stands for the proposition that a failure to make the necessary inquiries during voir dire is an assumption of risk and waiver objections to a juror. Based upon the record in this case, including the series of communications by this dismissed alternate, who clearly had bias and her own thoughts about, as counsel for B'Quan Sledge indicated, the way this case should go. And in that same transcript indicated that her credibility was certainly in question. This is the very reason for the case law and the rule of evidence that asks us to proceed very cautiously to reopen a jury verdict. As to the argument regarding the CCE jury instructions, Your Honors, the United States does believe that this was invited error. The case law reflects that the violations must be decided unanimously. But the case law also says that the United States need not charge those violations. In fact, with respect to CCE, they can be allegations, they can be violations, they can be prior convictions. And so the United States attempted to address the unanimity requirement by offering a special verdict form, which was strongly objected to throughout the trial in this case. That special verdict form is consistent with other controlled substance offenses which require special interrogatories to be answered by the jury to establish guidelines and minimum mandatory sentences in certain offenses. And it has... Can you recall the basis for the strong objections to the use of that form? In the United States' recollection, it was not grounded upon a particular case or a statute, but rather, as counsel has argued today, that this should be reflected in the jury instructions. It is a rather cyclical argument, Your Honors. In this case, if the court looks at what was proposed by counsel with respect to the jury instructions, I believe that those are reflected at 1152. What counsel requested was that the predicate offenses, so to speak, the prior violations, be identified in the jury instructions themselves. That would have required a lengthy listing of a series of violations that took place over a number of years because as the... And yet, I believe the United States Supreme Court has said that each violation is a separate element of the crime. So it would seem rather important that that be in the jury instructions, especially if it has to be shown unanimously. And, Your Honor, I believe that there are approximately 90 offenses. I think that's what the Richardson case looked at that you're referring to, indicated there are approximately 90 offenses within the code that could be the predicate offenses in a CCE. In this case, based upon a requested modification by the United States, three offenses were included in the jury instructions. So to the extent that the counsel wanted those identified, they were identified. The three offenses were identified in the jury instructions. If Darius was found not guilty of one offense, how could this court on appeal determine that the jury necessarily found three particular offenses unanimously? Well, Your Honor, again, I would point back to the invited error, that the failure to accept the special verdict form provided. The special verdict form provided by the United States is a part of the record in this case, and it would have identified each of the deliveries, each of the possessions, that the United States identified through testimony and other exhibits at trial and argued in closing argument could be found and relied upon by a unanimous decision of this jury to identify the predicate offenses. Is it fair to equate a strongly objected to special verdict form to invited error? It seems kind of maybe a stretch. In the context of this case, yes, Your Honor. When this court reviews the proposed jury instructions by Darius Sledge, and I would note that it was only Darius Sledge who proposed any jury instructions, when you look at what was proposed, there is only a reference to a blank that indicates the predicate offenses. There's no reference to unanimity. There is no reference to what else Mr. Sledge wanted in the jury instructions. It was simply this argument that we're hearing here today, that one way or another the jury instructions needed to reflect the law of the case without sufficiently identifying what it was that Mr. Sledge was requesting. So I think that the context of the entire argument in rejecting the special verdict form, in proposing instructions that really the only modification was that the offenses be identified, and they were in the final jury instructions. There were three offenses identified. There was no discussion of unanimity, no discussion of language, and I know that that was one of the questions that the court has asked Mr. Sledge, is where did the unanimity go? It was not, as the United States has viewed the record, a part of the requests that Mr. Sledge made in this case. And that, Your Honor, is why the United States believes that this is invited error. The United States identified in its proposed special verdict form that each of the violations would need to be found unanimously and beyond a reasonable doubt, specifically articulated what those violations would be, and provided the court and counsel with an example of a special verdict form and other cases where it had been used in order to properly direct the jury and create a record of what it found unanimously. And that really is the solution in a situation where the United States... So as I understand it, Mr. Jackson's argument, though, is that the special verdict form is not the equivalent of an instruction. And do you have any cases where a special verdict form kind of saves a failure in the instructions? Your Honor, I think that there are two cases that I would point the court to. One is the Second Circuit case from 1990. That's Aiello. And that court noted that a special verdict form can concisely organize the enterprise to the jury in conjunction with the law. I would also point the court to the Torres-Laranega case from the Tenth Circuit in 2007. There's a footnote, note 8, in which it discusses the special verdict form. And, Your Honor, I think that it's important to note that the United States was advocating for the two things to be together, consistent with the law that says we don't look at a particular instruction. We look at the instructions as a whole to determine whether or not they adequately reflected the law. The United States recognized the law and attempted to address the law, both in the instructions, by identifying the predicate offenses, not simply leaving them open to interpretation, but identifying three predicate offenses, not just those charged by separate count in the indictment, but those that it believed it could prove throughout the case itself. Of course, I think as Judge Grouse pointed out, had that instruction been given, there couldn't have been a conviction on the CCE because one of them resulted in an acquittal, right? Well, Your Honor, the United States argued that it was not simply the charged offenses, but it was the series of possessions and distribution throughout the enterprise that the jury could consider in determining the predicate offenses. So it was not just the possession with intent to deliver on which there was an acquittal, but the other series of offenses that were not separately charged, and of course the law would not require them to be. But you agree that the jury could not have just found one of the 90. They have to unanimously agree on three. Correct. At least three, Your Honor. How would we know that? Which ones? Well, Your Honor, I don't think that the case law requires us to know. The way that we would know that is a special verdict form, which the United States advocated. But that is not required. But we do know that the jury was instructed that it must be unanimous in finding each of the elements and that the elements required that series of violations, and that it included those three separately identified offenses. And if the court looks at the closing argument by the United States, the United States specifically identified what was charged and what was uncharged that the jury could consider and repeatedly referenced that the jury must be unanimous in determining that those predicate offenses were proved beyond a reasonable doubt. Is it the government's position that this question is a plain error question? That's difficult, Your Honor, based upon the different briefs that were submitted in this case. You have Baquan Sledge, who is not challenging the jury instructions and is looking at this through the vehicle of failure to dismiss under Rule 29. Then you have Darius Sledge looking at the jury instructions and not really identifying a standard of review. Let me ask it this way. When the court was ready to give its instructions, which I presume it had provided to all counsel, did it offer an opportunity to make final objections? And were there any final objections? It did offer an opportunity to make objections. As I stand here today, I do not recall whether at that point in the final instructions what counsel said, but what I would say, Your Honor, is that this was visited at various points along the way, and the attorney for Darius Sledge repeatedly said, we think this should be reflected in the jury instructions, but what wasn't offered is how that should be reflected. And I think that's one of the issues here, is there was never an affirmative statement of how the jury instructions were lacking. And the United States, on the other hand, identified where they perhaps could be lacking, and that would have been saved through the special verdict form. Counsel, is it this verdict form that the government offered? Is that what the district court referred to as too onerous? I believe that in the context of that discussion, the United States had offered an example from another jurisdiction and had identified, that is at 1188-1, a jury verdict form that had been used in the Northern District of Iowa's Western Division. And it was in the context of that discussion that the judge indicated that this would be onerous. It was the United States' position that the verdict form that was offered by the United States in this case was not onerous. It was clear. It was concise. Well, but the district court thought it would be, didn't it? I believe that the court's comments, yes, were that he thought it would be onerous, but also those comments were taken in the context of its displeasure with the CCE as a whole. And let me see if I understand this. Did the government offer a jury instruction that matched the verdict form? I believe that it would. An instruction that instructed the jury how to work its way through this rather lengthy verdict form. I don't believe that we got to that point, Your Honor, in the discussion because the objections to the special verdict form, I see that I'm out of time. May I briefly respond? Yes. Because the objections to the special verdict form stopped the discussion as to how the special verdict form would interplay with the final jury instructions. I have one other question for you. In his brief, Darius alluded to a double jeopardy issue. Essentially, I think, arguing that the conspiracy count is a lesser included offense of the CCE. Does the government have a position on that? Your Honor, we did note in a footnote on that point that as a lesser included, if there was a remedy, if any, it would be a remand to vacate the conspiracy conviction as a lesser included. Is that the government's position that we should vacate that and remand or not? Your Honor, the United States' position is that it is a lesser included offense, and the remedy, if any, would be to vacate and remand. That doesn't answer my question. Let's try one more time. Is the government's position that we should remand and vacate or that there is no remedy? No, that is the remedy that the United States would… So then the government's position is that we should remand to vacate the conspiracy count? Yes, Your Honor. Thank you. The government has argued that this case, which presents a question of jury misconduct, is somewhere on a spectrum with allegations that are based merely on speculation and conjecture on one hand and substantiated allegations on the other. It's our position that this case fares somewhere in the middle, based on this Court's precedent in United States v. Tucker. In that case, this Court remanded on, in its own words, a woefully incomplete record in which most of the allegations were supported only by counsel's narrative of proof because the Court felt that a full hearing was necessary to bring out credibility determinations that the district court was in the best position to make. It is established case law that whenever a court has significant concerns about credibility of allegations that have been made, the very best tool that any court has to test the veracity of those allegations is live testimony and cross-examination. Those are the best tools that we have, and because no evidentiary hearing was held, as it relates to the allegations of juror misconduct, Mr. Sledge was denied an opportunity to fully vet these allegations through an evidentiary hearing. Therefore, Your Honor, we believe that an evidentiary hearing is necessary and appropriate on remand to fully investigate and remedy these allegations. And for this reason and all the other reasons set forth in our brief, we would ask that this Court remand for further proceedings. Thank you. Thank you, Ms. Joyce. Mr. Jackson, we edged into your time, so we'll give you a minute if you'd like to make a little rebuttal. Thank you very much, Judge. Just very briefly, I want to just very quickly address that I strenuously objected at the trial court level to the special verdict form. In searching the transcript a moment ago, I don't recall that, and in looking through the transcript, I don't think that's correct. I think what is more accurate is that I cited to United States v. Jerome, where the Ninth Circuit reversed a complex special verdict form, and I certainly brought that to the trial court's attention, that a complex special verdict form can result in a mistrial, and so that I had concerns about a complex special verdict form. I don't even recall that I specifically or formally objected to the government's complex special verdict form. Even in reviewing the transcript during arguments today, it appears as though my concerns were exactly the same as they were today. Let's get a jury instruction that specifically makes it clear, provides the due process rights, the constitutional rights for my client, of what the predicate offenses were. Thank you for the additional time. Very well. Thank you.